FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 06, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REBECCA R.,<br><br>     Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>     Defendant. | NO: 1:17-CV-3200-FVS<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 10 and 11. This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney D. James Tree. The defendant is represented by Special Assistant United States Attorney Leisa A. Wolf. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 10, and **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 11.

**JURISDICTION**

Plaintiff Rebecca R.[1] protectively filed for supplemental security income on January 2, 2014, alleging an onset date of September 30, 2013. Tr. 187. Benefits were denied initially, Tr. 88-96, and upon reconsideration, Tr. 97-103. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on June 28, 2016. Tr. 34-59. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 17-33, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 24 years old at the time of the hearing. Tr. 40. She stopped going to school at sixth grade, and did not get her GED. Tr. 40. She resides with her parents, brother, and young son. Tr. 40-42. Plaintiff testified that she was kidnapped at age 13 and taken to Mexico for four years. Tr. 40. She reports that she has two older kids who live with their father. Tr. 44, 49. He "doesn't allow"

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

her to see the kids.  Tr. 44-45.  Plaintiff testified that she worked as a cherry sorter in a warehouse for a week and a half, but stopped because she had anxiety being around people, and especially men.  Tr. 42.

Plaintiff testified that she stays in her room all day, aside from going out to the living room for an hour or two.  Tr. 45.  She reported that she watches TV with her son, does not read, does not get on the computer, does not have social media accounts, does not take her son to the park or outside, does not exercise, and her dad drives her to medical appointments and the grocery store.  Tr. 45-47.  Plaintiff testified that she finds therapy helpful, and takes medication but still feels depressed and anxious.  Tr. 48.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id*. (quotation and citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 2, 2014, the application date. Tr. 22. At step two, the ALJ found Plaintiff has the following severe impairments: major depressive disorder; post-traumatic stress disorder; and borderline personality disorder. Tr. 22. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 22. The ALJ then found that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to understand, remember, and carry out simple routine tasks; she can have no contact with the general public and is unable to perform tandem tasks; she is able to have occasional, brief contact with coworkers; and she is able to work in a predictable workplace routine with minimal changes in the workplace.

Tr. 24. At step four, the ALJ found that Plaintiff has no past relevant work. Tr.

28. At step five, the ALJ found that considering Plaintiff's age, education, work

experience, and RFC, there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform, including: industrial cleaner, kitchen helper,

and laundry worker. Tr. 28-29. On that basis, the ALJ concluded that Plaintiff has

not been under a disability, as defined in the Social Security Act, since January 2,

2014, the date the application was filed. Tr. 29.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her supplemental security income benefits under Title XVI of the Social Security

Act. ECF No. 10. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence;

3. Whether the ALJ erred in considering Plaintiff's obesity; and

4. Whether the ALJ properly considered lay witness evidence.

## DISCUSSION

### A. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's

testimony regarding subjective pain or symptoms. "First, the ALJ must determine

whether there is objective medical evidence of an underlying impairment which

could reasonably be expected to produce the pain or other symptoms alleged."

1 | *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not
2 | required to show that her impairment could reasonably be expected to cause the
3 | severity of the symptom she has alleged; she need only show that it could
4 | reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572
5 | F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however,

Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 25.

### 1. Daily Activities

First, the ALJ noted that Plaintiff's "allegations of debilitating symptoms are generally inconsistent with her admitted activities." Tr. 25. Plaintiff correctly notes that a claimant need not be utterly incapacitated in order to be eligible for benefits. ECF No. 10 at 14 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, Plaintiff testified that she spends her day mostly isolated in her bedroom and sleeping; and she does some household chores and makes simple meals, although her mother prepares most meals. Tr. 24, 45-46. She also testified that she does not read, does not use the computer or a phone, does not take her son to the park or outside, does not have social media accounts, does not drive, and does not exercise. Tr. 46-48. Plaintiff testified that she spends about two hours a day with her son, and her brother and mother mostly take care of him. Tr. 53.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~10

However, as noted by the ALJ, "[w]hile she testified that she provides little to no care for her son during the day, [Plaintiff's] Function Report and her father's Third Party Function Report indicate that she cares for her son, watches him, and takes care of his personal needs." Tr. 25 (citing Tr. 215 (noting Plaintiff "feeds, bathes, and clothes" her son with "some help"), 223). Plaintiff argues the ALJ "ignored" that Plaintiff received some help from her family in caring for her son. ECF No. 10 at 15. However, Plaintiff's ability to care for children without help during any period may undermine claims of totally disabling symptoms. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). It was reasonable for the ALJ to note that Plaintiff's testimony that she provided only two hours of care for her son was inconsistent with her own reports, and the report of her father, that she was ultimately responsible for caring for her young son, including feeding, bathing, and dressing. *See* Tr. 215.

In addition, as noted by the ALJ, Plaintiff reported she has no difficulties tending to her own self-care, does housework including cleaning and laundry, gets on the computer to reapply for public benefits, reads, watches television, and socializes on a regular basis. Tr. 25, 215-18, 223-26, 314. Moreover, the ALJ specifically found that "[d]espite reporting that she isolates in her room for most of the day and is unable to be around other people due to her symptoms, the record demonstrates that she attends and is actively engaged in group therapy." Tr. 25 (citing, *e.g.*, Tr. 376). Plaintiff argues the activities cited by the ALJ, and her

ability to attend group therapy, are not inconsistent with her testimony. ECF No. 10 at 15-16. However, regardless of whether the evidence could be viewed more favorably to Plaintiff, it was reasonable for the ALJ to conclude that "[w]hile her reported activities of daily living are not necessarily indicative of her ability to work, such evidence certainly shows that she is more functionally capable, than alleged." Tr. 25; *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

## 2. *Lack of Objective Medical Evidence*

Second, the ALJ found Plaintiff's "allegations are generally inconsistent with treatment notes that suggest she is more functional than alleged," including normal findings on mental status examination. Tr. 25. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ set out the medical evidence contradicting Plaintiff's claims of disabling mental limitations,[2] including consistent mental status examinations indicating "she has an appropriate mood, is cooperative, her speech is normal, and she has good insight, judgment, and intellect." Tr. 25 (citing Tr. 328, 332, 338, 340, 359, 376, 378, 380, 384, 388, 390, 395, 400, 408, 411, 413, 418, 422, 424, 428, 432, 434, 439, 442). The ALJ also noted that Plaintiff attends and is "actively engaged" in group therapy, and at her initial intake for mental health treatment in April 2013 she presented with normal affect, normal judgment, and normal attention span and concentration. Tr. 25 (citing Tr. 304-05). Plaintiff argues the

---

[2] The ALJ additionally noted that Plaintiff "has also reported to some auditory hallucinations but these are generally unsupported by her treatment notes as a whole and she did not consistently report these symptoms to her treating or examining providers. Importantly no treatment provider has ever reported seeing [Plaintiff] respond to internal stimuli." Tr. 25 (citing Tr. 315, 362). Plaintiff argues the ALJ erred in this reasoning because she told providers "she was only hearing voices sometimes," and did not claim it was happening on a constant basis. ECF No. 10 at 17. However, regardless of whether Plaintiff consistently reported auditory hallucinations, the Court finds it was reasonable for the ALJ to find that Plaintiff's reports of auditory hallucinations were also not supported by "the treatment notes as a whole." *See Rollins*, 261 F.3d at 857; *Burch*, 400 F.3d at 679.

ALJ "failed to adequately consider positive findings that [Plaintiff] was tearful, depressed, anxious or worried, irritable or agitated, hand-wringing, and abasing." ECF No. 10 at 16 (citing Tr. 283, 291, 296, 301, 326, 328, 359, 398, 400, 403, 418, 428, 432-36, 442, 445). However, regardless of evidence that could be interpreted more favorably to the Plaintiff, the ALJ properly relied on evidence from the overall record, as cited extensively above, to support the finding that Plaintiff's allegations of severe mental health symptoms, were inconsistent with the medical record, including mental status examination results. Tr. 25; *Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation).

In addition, the ALJ found Plaintiff's "allegations are generally inconsistent with the medical opinions that show that she has considerable work-related abilities despite her impairments," including: the ability to perform simple and repetitive tasks, with limited contact with the general public; and the ability to work with a predictable workplace routine and minimal changes. Tr. 26-27, 67-69 (Dr. Bruce Eather, reviewing state agency psychologist), 81-83 (Dr. John F. Robinson, reviewing state agency psychologist, 316-17 (Dr. Carina Bauer, examining psychologist). "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination . . . [t]he ALJ may consider testimony from physicians and third

parties concerning the nature, severity and effect of the symptoms of which the claimant complains." *See Thomas*, 278 F.3d at 958-59.

Based on the foregoing evidence, the ALJ reasonably concluded that the severity of Plaintiff's alleged mental health limitations "are generally inconsistent with treatment notes that suggest she is more functional than alleged" and "inconsistent with the medical opinions that show [Plaintiff] has considerable work-related abilities despite her impairments." Tr. 25-26. This lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

### 3. Failure to Seek Treatment

Third, the ALJ noted that despite reporting to treating providers that she had symptoms of depression for a long time, "the record also indicates that she did not seek treatment until 2013." Tr. 25. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016),

available at 2016 WL 1119029. Here, the ALJ specifically considered Plaintiff's "testimony that she lacked the resources to obtain treatment and that she was fearful of speaking with a counselor due to her reported hospitalization in 2012." Tr. 25, 51-52.

Plaintiff argues that her treatment record, or lack thereof, prior to her alleged onset date in 2013 is "largely irrelevant." ECF No. 10 at 17. However, while statement of disability made prior to the relevant adjudicatory period may be less relevant, the Court finds it was reasonable for the ALJ to discount Plaintiff's symptom claims because she did not seek any treatment until six months before her alleged onset date of disability. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (statement of disability made outside the relevant time period may be disregarded). Moreover, Plaintiff contends that the ALJ failed to consider her report to a treating provider that her mother actively discouraged her from receiving mental health treatment. ECF No. 10 at 18 (citing Tr. 403). However, as this statement was made in the course of Plaintiff's treatment, it was arguably not a "barrier to treatment" as such, and the Court finds no error in the ALJ failing to consider this evidence as a possible justification for Plaintiff's failure to seek treatment prior to 2013.

Thus, the Court finds Plaintiff's failure to seek treatment for allegedly disabling mental health symptoms until 2013, six months prior to her alleged onset date of disability, was a clear and convincing reason to discount her symptom

claims. Moreover, even assuming, *arguendo*, that the ALJ erred in considering

Plaintiff's failure to seek treatment as a reason to discount her symptom claims,

any error is harmless because, as discussed herein, the ALJ's ultimate credibility

finding was supported by substantial evidence. *See Carmickle v. Comm'r of Soc.*

*Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

### 4. *Improvement with Treatment*

Fourth, the ALJ noted that Plaintiff's "treatment record indicates that she

responded positively to treatment in a short period." Tr. 26. Conditions

effectively controlled with treatment are not disabling for purposes of determining

eligibility for benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006

(9th Cir. 2006); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir.

2008) (a favorable response to treatment can undermine a claimant's complaints of

debilitating pain or other severe limitations). In support of this finding, the ALJ

noted that while Plaintiff was found to have "severe depression" in December

2013, "by February 2014 she was noted to have only 'mild depression'." Tr. 26

(citing Tr. 307, 327). Further, as noted by the ALJ, a "longitudinal review of her

treatment record demonstrates that her medications are helping and her treatment

has generally been effective." Tr. 26. The finding is supported by generally

unremarkable psychiatric examination findings throughout the record, Plaintiff's

denial of significant side effects or memory impairments, and her participation in

group therapy where she was "observed repeatedly with a non-depressed mood"

and was fully engaged.  Tr. 26 (citing Tr. 283, 291, 327-28, 359, 376, 377-79, 380, 384-85, 388, 393-94, 397, 400, 439).

Plaintiff argues that it was error for the ALJ "to pick a few isolated instances of improvement," and cites (1) a March 2016 record indicating Plaintiff reported thoughts of self-harm, (2) an April 2016 record noting Plaintiff felt she had improved but still had anxiety, and (3) multiple records, as discussed above, noting that Plaintiff presented as tearful at treatment visits.  ECF No. 10 at 18 (citing Tr. 380, 388-89).  However, the ALJ specifically relied on the same treatment record in April 2016 as support for this reasoning, wherein Plaintiff reported that while she still had anxiety, she was feeling better overall and reported "a significant improvement."  Tr. 26 (citing Tr. 380).  Moreover, the Court's review of the treatment records cited by Plaintiff as evidence of her "tearful" presentation indicate that the treating provider contemporaneously noted Plaintiff was cooperative, maintained eye contact, had clear speech, and was dressed appropriately with appropriate affect.  *See* ECF No. 10 at 18 (citing Tr. 296, 301, 403, 416, 426, 432, 434, 445).  Based on the foregoing evidence, and regardless of evidence that could be interpreted more favorably to Plaintiff, the Court finds that Plaintiff's improvement with treatment across the longitudinal record was a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's severe symptom claims.  *See Burch*, 400 F.3d at 679.

### 5. *Inconsistencies*

Fifth, the ALJ found Plaintiff's "inconsistent statements to providers and during testimony further detract from the consistency of her allegations." Tr. 26. In evaluating the severity of Plaintiff's symptoms, the ALJ may consider inconsistencies in Plaintiff's testimony, and between her testimony and her conduct. *See Thomas*, 278 F.3d at 958-59; *Tommasetti*, 533 F.3d at 1039 (prior inconsistent statements may be considered). Primarily, the ALJ supported this finding by noting that Plaintiff testified she was kidnapped by a family acquaintance who took her to Mexico, but she told a treating mental health provider that she ran away to Mexico, not that she was kidnapped. Tr. 26 (citing Tr. 40, 358). As noted by the ALJ, this individual was never prosecuted and has custody of Plaintiff's children through a parenting plan from a Washington State family court. Tr. 26. Moreover, Plaintiff testified that she cannot be around men as a result of her alleged kidnapping, "but she met up with her ex-husband after returning from Mexico, dating him and eventually marrying him." Tr. 26.

Plaintiff argues the ALJ "failed to properly consider that [Plaintiff] was a 13-year old child at the time of her trafficking," and further asserts that marrying an abusive man was not inconsistent with her claimed difficulty being around men because she has borderline personality disorder, a disease characterized by impulsivity and unstable interpersonal relationships. ECF No. 10 at 18-19. However, regardless of sympathy for Plaintiff's circumstances, it was reasonable

for the ALJ to rely on (1) Plaintiff's prior inconsistent statements to providers about how she ended up in Mexico, and (2) the inconsistency between Plaintiff's testimony that she was unable to be around men, and her marriage soon after returning from Mexico.[3]  Tr. 26; *see Thomas*, 278 F.3d at 958-59.  These inconsistencies between Plaintiff's testimony and her conduct, and her prior inconsistent statements, were clear and convincing reasons to discount Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

---

[3] Similarly, as noted by the ALJ, Plaintiff "admitted to lying to her ex-husband by stating she was sick in order to keep their relationship going."  Tr. 26.  Plaintiff argues "failed to recognize the context of these statements" because Plaintiff suffers from borderline personality disorder "which is characterized by 'frantic efforts' to avoid abandonment."  ECF No. 10 at 20.  However, in evaluating the credibility of symptom testimony, the ALJ may utilize ordinary techniques of credibility evaluation.  *See also Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996).  Thus, the Court finds it was reasonable for the ALJ to conclude that this "admission casts further doubt on [Plaintiff's] allegations of disabling impairments."  Tr. 26.

## B. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester,* 81 F.3d at 830–831). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (quotation and citation omitted).

Plaintiff argues the ALJ erroneously considered the opinion of examining psychologist Carina Bauer, Psy.D. ECF No. 10 at 4-9. In March 2014, Dr. Bauer examined Plaintiff and found she was able to concentrate during the exam and did

not need to be redirected, had good hygiene, was friendly and engaging as the exam progressed despite being tearful at first, was fully oriented, was able to recall 5 digits forward and 4 backward, was able to recall 3 out of 3 objects after five minute delay, and was able to follow a three-step command and spell "world" forward and backward. Tr. 26-27, 315-16. Dr. Bauer additionally noted that Plaintiff's "issues are treatable and it is likely she can make a full recovery" with consistent treatment. Tr. 316.

Based on her examination findings, and her review of Plaintiff's therapy notes and Function Report, Dr. Bauer opined that she is able to perform simple and repetitive tasks, manage detailed and complex tasks, accept instructions from supervisors, "seems able" to perform tasks without special instruction or additional instructions, and maintain regular attendance in the workplace. Tr. 316-17. Dr. Bauer also found that Plaintiff had mild impairment interacting with coworkers and the public, and mild impairment in managing stress at work. Tr. 317. The ALJ gave her opinion significant weight because "Dr. Bauer's examination findings are consistent with her opinion and [Plaintiff's] treatment record as a whole, which demonstrate improvement with therapy and medications." Tr. 26-27.

Plaintiff contends that the ALJ erred by purporting to give significant weight to Dr. Bauer's opinion but failing to properly incorporate several of her assessed limitations into the RFC. ECF No. 10 at 5-9. First, Dr. Bauer noted that Plaintiff "might benefit from receiving follow-up support to make sure she is managing the

activity or task well." Tr. 317. The ALJ specifically found "the fact that [Plaintiff] might benefit under some circumstances does not necessarily eliminate imperfect vocational settings from the realm of her residual functional capacity." Tr. 26 n.1 (citing *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir.2009)). Plaintiff argues that this statement by Dr. Bauer was intended as a functional limitation, and the ALJ therefore "misinterpreted the purpose of Dr. Bauer's workplace limitation, which should have been incorporated into the RFC." ECF No. 10 at 7-8. The Court disagrees. As an initial matter, while Dr. Bauer noted that Plaintiff "might benefit from receiving follow-up support," she also specifically opined that Plaintiff "seems able to perform tasks without special instruction or additional instruction." Tr. 317. Moreover, the language used by Dr. Bauer in suggesting Plaintiff "might benefit" from follow-up support indicates it was merely a recommendation. Thus, the Court finds the ALJ properly relied on *Valentine* to find this portion of Dr. Bauer's opinion was merely a recommendation, as opposed to a functional limitation, and therefore need not be reflected in the assessed RFC. *See Valentine*, 574 F.3d at 691-92 (recommendations or suggestions from medical providers are not work-related limitations of function that need be reflected in the RFC); *see also Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation).

Second, Plaintiff argues the ALJ erred by providing "no reason not to fully credit Dr. Bauer's findings, including (1) the "mild issue" that Plaintiff "reported

some difficulty with sleep, which might make it difficult for her to maintain a job with an early start time if she is having difficulty falling asleep and staying asleep at night"; and (2) Plaintiff's self-reported "PTSD symptoms (easily overwhelmed and hypervigilance) may make it difficult for her to manage usual stress at work." Tr. 317. Plaintiff argues that "[i]f a person has trouble starting her work on time and has difficulty managing typical stress in a workplace, she is unlikely to be punctual and maintain attendance within these tolerances and so is disabled." ECF No. 10 at 7. However, despite Dr. Bauer's notes that it "might" be "difficult for her to maintain a job with an early start," and "may" be difficult to manage usual stress at work, Dr. Bauer ultimately concluded (1) that Plaintiff appears able to maintain regular attendance in the workplace, and (2) Plaintiff has only "mild impairment" managing stress at work. Tr. 317. Thus, the ALJ "rationally rel[ied] on [these] specific imperatives regarding [Plaintiff's] limitations" when evaluating Plaintiff's RFC, as opposed to speculation that Plaintiff "might" have difficulties with a job that starts early, and "may" have difficulty managing workplace stress. ECF No. 11 at 9-10 (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)). The ALJ did not err by declining to incorporate limitations based on difficulty managing stress, or maintain attendance, into the assessed RFC. *See Rounds*, 807 F.3d at 1006 ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

1    The Court finds the ALJ properly considered Dr. Bauer's opinion. Moreover,

2    the RFC, and the resulting hypothetical proposed to the vocational expert, contained

3    the limitations reasonably identified by the ALJ and supported by substantial

4    evidence in the record. *Bayliss,* 427 F.3d at 1217 (RFC determination will be

5    affirmed if supported by substantial evidence).

6    **C. Obesity**

7    Plaintiff argues the ALJ "entirely failed to consider [Plaintiff's] obesity in

8    assessing whether she met or equaled a Listing and also in assessing her RFC."

9    ECF No. 10 at 12. SSR 02-1p "reminds adjudicators to consider [obesity's] effects

10   when evaluating disability," and directs ALJs "to consider the effects of obesity

11   not only under the listings but also when assessing a claim at other steps of the

12   sequential evaluation process, including when assessing an individual's [RFC]."

13   SSR 02-1p at *1 (September 12, 2002), *available at* 2002 WL 34686281.

14   However, as noted by Defendant, "Plaintiff has not alleged that obesity limits her

15   ability to work nor does she allege any difficulties" from obesity. ECF No. 11 at

16   11 (citing Tr. 206). In fact, the only evidence cited by Plaintiff to support her

17   argument is a single treatment record noting Plaintiff's weight in March 2016,

18   without additional calculation of her BMI, or recorded observation as to Plaintiff's

19   alleged obesity. *See* Tr. 388. No provider found Plaintiff's obesity was a severe

20   impairment; nor does Plaintiff identify how her obesity, specifically, resulted in

21   limitations beyond those in the assessed RFC.

When there is no evidence that a claimant's obesity limits her functioning, there is no error when the ALJ does not consider obesity in the sequential evaluation process. *See Burch*, 400 F.3d at 681. In *Burch*, as in this case:

> There was no evidence before the ALJ, and none in the record, which states that claimant's obesity limits her functioning. Neither treatment notes nor any diagnoses addressed claimant's limitations due to obesity. The medical record is silent as to whether and how claimant's obesity might have exacerbated her condition. Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work.

*Id.* at 683. Thus, as Plaintiff has not identified any functional limitations associated with her obesity that were not considered in determining her RFC, the Court finds no error in the ALJ's consideration of obesity at step three, or at any subsequent steps in the sequential evaluation process. *Id.* at 684 ("there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider. . . . [T]he ALJ properly considered [Plaintiff's] obesity to the extent required based on the record.").

**D. Lay Witness**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to

[his] condition."). To discount evidence from lay witnesses, an ALJ must give reasons "germane" to each witness. *Dodrill*, 12 F.3d at 919.

Here, Plaintiff's father, George Redick, completed a Third Party Function Report, in which he reported that Plaintiff does not interact well with others due to her anxiety and depression, and does not follow through on tasks. Tr. 27, 214. The ALJ gave his lay witness statement "some weight" because "his observations cannot outweigh the objective findings in the record. [Plaintiff's] presentation at appointments as generally cooperative and demonstrating improvement, and her performance at the consultative examination [with Dr. Bauer] indicates she is able to follow through and complete tasks without issue." Tr. 27. An ALJ may discount lay testimony if it conflicts with medical evidence. *Lewis*, 236 F.3d at 511 (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). Plaintiff argues this finding was made in error because "objective evidence of record primarily supports [Mr. Redick's] testimony." ECF No. 10 at 10-11. In support of this argument, Plaintiff cites Dr. Bauer's observations that Plaintiff was initially withdrawn and tearful, had flat tone and blunt affect, was dysphoric, could not perform serial 7s, and had fair to poor judgment and insight. Tr. 314-16. Plaintiff also refers the Court to the same evidence cited in support of her unavailing argument regarding lack of corroboration of Plaintiff's symptom claims by the overall medical record, including treating provider notes that Plaintiff was tearful,

depressed, anxious or worried, irritable or agitated, hand-wringing, and abasing. ECF No. 10 at 11.

However, as discussed *supra* with regard to Dr. Bauer's opinion, and Plaintiff's symptom claims, it was reasonable for the ALJ to find that the severity of Mr. Redick's lay witness opinion was not supported by the overall record. For example, Dr. Bauer also found Plaintiff was friendly and able to concentrate during the examination and did not need to be redirected, was friendly and engaging as the exam progressed despite being tearful at first, was fully oriented, was able to recall 5 digits forward and 4 backward and recall 3 out of 3 objects after a 5 minute delay, was able to follow a three step command, and was able to spell "world" forward and backward. Tr. 26-27, 314-16. Based on her examination and review of Plaintiff's records, Dr. Bauer ultimately opined that Plaintiff was able to perform simple and repetitive tasks with only mild impairments interacting with others and managing stress. Tr. 316-17. Moreover, as noted by the ALJ earlier in the decision, objective mental status examinations throughout the record found Plaintiff "has an appropriate mood, is cooperative, her speech is normal, and she has good insight, judgment, and intellect." Tr. 25 (citing Tr. 328, 332, 338, 340, 359, 376, 378, 380, 384, 388, 390, 395, 400, 408, 411, 413, 418, 422, 424, 428, 432, 434, 439, 442).

For all of these reasons, the Court finds the lack of support for Mr. Redick's lay witness testimony in the longitudinal medical record, including objective findings, was a germane reason to give his lay testimony "some" weight.

**CONCLUSION**

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom claims, properly weighed the medical opinion evidence, properly considered Plaintiff's obesity, and did not err in considering the lay witness testimony. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** December 6, 2018.

　　　　　　　　　_____*s/ Rosanna Malouf Peterson*_____
　　　　　　　　　ROSANNA MALOUF PETERSON
　　　　　　　　　United States District Judge